RECOMMENDED FOR FULL-TEXT PUBLICATION
Pursuant to Sixth Circuit Rule 206
ELECTRONIC CITATION:  2001 FED App. 0068P (6th Cir.)
File Name:  01a0068p.06

# UNITED STATES COURT OF APPEALS

## FOR THE SIXTH CIRCUIT

_____

THIAGARAJAR MILLS, LTD.,
      *Plaintiff-Appellant,*

    *v.*

LOUIS W. THORNTON, III, et al.,
      *Defendants,*

STANDARD CHARTERED BANK,
      *Defendant-Appellee.*

No. 99-6560

Appeal from the United States District Court
for the Western District of Tennessee at Memphis.
No. 96-03066—Julia S. Gibbons, Chief District Judge.

Argued:  January 23, 2001

Decided and Filed:  March 13, 2001

Before:  WELLFORD, RYAN, and SUHRHEINRICH,
Circuit Judges.

1

————————————

**COUNSEL**

————————————

**ARGUED:** K. Jayaraman, Memphis, Tennessee, for Appellant. Martin Domb, HILL, BETTS & NASH, New York, New York, for Appellee. **ON BRIEF:** K. Jayaraman, Memphis, Tennessee, Connie K. Westbrook, Memphis, Tennessee, for Appellant. Martin Domb, HILL, BETTS & NASH, New York, New York, Michael C. Patton, BAKER, DONELSON, BEARMAN & CALDWELL, Memphis, Tennessee, for Appellee.

————————————

**OPINION**

————————————

HARRY W. WELLFORD, Circuit Judge. This controversy arose out of a substantial criminal fraud perpetrated by Louis W. Thornton, III ("Thornton") and corporate entities controlled by him in Memphis, Tennessee, upon plaintiff, Thiagarajar Mills ("Thiagarajar"), a textile manufacturer situated in India. The defendant involved in this appeal is Standard Chartered Bank ("SCB") in New York, which acted as a "collecting bank" in connection with a transaction involving a large sale of cotton from Thornton's corporations to Thiagarajar. Unfortunately for Thiagarajar, Thornton received payment for a shipment of cotton prior to the delivery of the goods, but the product actually delivered turned out to be worthless. Thiagarajar sued SCB, claiming that it should be held liable for over $319,000 in losses resulting from the fraudulent transaction.[1] The district court granted summary judgment to SCB, finding that absolutely no evidence supported claims that SCB knew or should have

---

[1]Though Thiagarajar also sued Thornton personally, Thornton consented to a large judgment, and the corporate entities through which he transacted business are worthless.

known about Thornton's fraud. Thiagarajar now appeals that adverse judgment, arguing:

(1) The district court erred in "discounting" alleged inconsistent Fed. R. Civ. P. 30(b)(6) testimony of an SCB bank official;

(2) The district court erred in failing to find "lack of good faith and breach of duty on the part of SCB as a collecting bank in conducting the underlying cash against document transaction;" and

(3) The district court erred in "ignoring compelling circumstantial evidence . . . [of] . . . conspiratorial liability [against] SCB."

We **AFFIRM** the district court's judgment for SCB.

The transaction between these parties was the third in a series of similar schemes whereby Thornton's corporation, Peregrine International Trading, Inc. ("Peregrine"), agreed to sell high-quality raw cotton to foreign textile mills, and the mills agreed to pay Peregrine with money received through letters of credit issued by foreign banks. The product actually sent to the mills, however, was worthless raw cotton lint rather than high-quality raw cotton.

In the first two of those fraudulent transactions, the parties utilized letters of credit arrangements in which SCB had substantially different responsibilities (and received much more substantial fees) than in the instant transaction. In the transaction at issue, the agreement between Peregrine and Thiagarajar was that most of the purchase price was made in advance of delivery on a "cash against documents" basis, utilizing a documentary collection procedure rather than letters of credit. As the district court noted, SBC acted as a "collecting bank" in which "the buyer pays for the goods when its bank receives the required documentation instead of paying for the goods upon arrival." *See* B. Clark, *The Law of Bank Deposits, Collections and Credit Cards*, ¶ 13.10(2) at

---

good faith.[2] Under the URC, moreover, banks such similarly situated to SCB in this arrangement are not responsible for the "form, sufficiency, accuracy, genuineness, falsification, or legal effect of any documents" reflecting the underlying agreement between the seller and buyer. Art. 15; *see Auto Servicio v. Compana Anonima Venezolana*, 765 F.2d 1306, 1310-11 (5th Cir. 1985).

With respect to the duty of SCB to Thiagarajar, the standard of care is the same under the URC of the New York Commercial Code. *See* NYUCC §§ 4-104(f), 4.501. Exercising reasonable care as the remitting bank in this case does not mandate inquiry as to the bona fides of the documents involved beyond facial examination thereof. The district court found, and Thiagarajar does not gainsay the fact, that SCB did not deal directly with Thornton in this transaction.

In sum, for all the reasons set forth in the district court opinion, we find that none of the issues raised by Thiagarajar have merit. We, accordingly, **AFFIRM** summary judgment for SCB.

---

[2] The district court noted that under URC, SCB had no obligation even to examine the underlying invoice because it was not a required document in the transaction between the parties.

13-37. Under this agreement, SCB was obligated to receive documents from Peregrine, forward such documents to the Thiagarajar on a collection basis, receive payment for the documents from Thiagarajar's bank if and when Thiagarajar accepted and paid for the documents and, in turn, pay Peregrine upon receipt of the funds. *See id.*

The documents involved in this particular controversy included a bill of lading, a commercial invoice, and a sight draft. In accordance with the parties' agreement, SCB forwarded these documents promptly upon receipt to Thaigarajar's bank in India, subject to the Uniform Rules for Collections ("URC"). Thiagarajar paid its bank $319,368 by wire transfer based upon the documents, and then SCB almost immediately remitted these funds to a Peregrine account in the British Virgin Islands. Discrepancies in the documents were later discovered, however, and Thiagarajar was unsuccessful in stopping payment to Peregrine.

Thiagarajar filed suit against Thornton, Peregrine, Thornton & Company (another Thornton-owned entity), SCB, and Alton Blakely. The cases against all defendants except Thornton and SCB were voluntarily dismissed, and the parties settled the case against Thornton. Thaigarajar sought to hold SCB liable on the theory that SCB knew or should have known, from its role in the prior transactions involving Peregrine, that Thornton had similarly defrauded other buyers, and that SCB should have so informed Thiagarajar.

On August 31, 1997, SCB moved for summary judgment. In support of that motion, SCB submitted the declaration of Muriel Castadot, SCB's officer who was principally responsible for communicating with Thornton and his companies concerning the services provided by SCB, wherein she denied any knowledge about Thornton's fraud. After allowing a generous amount of time for the parties to conduct additional discovery, the district court granted SCB's motion, finding that absolutely no evidence supported claims that SCB knew or should have known about Thornton's fraud, nor was any evidence submitted to show that SCB had in any way

conspired with Thornton to defraud others. Thiagarajar now appeals, claiming that the district court erred in various ways in its assessment of the evidence.

We are satisfied from our examination of the record that, in reaching its decision, the district court properly took into account the testimony of both Castadot and Drupatie Naraine, the two bank officials involved in the collection activity, and that this testimony was neither untrustworthy nor inherently inconsistent as contended by Thiagarajar. The district court was correct in its conclusion that "[p]laintiff offered no evidence that SCB knew or should have known about Thornton's fraud in connection with the [previous, unrelated] Thai and Kohinoor transactions." These other transactions were significantly different in that they involved different financial arrangements (they used letters of credit rather than the "cash against documents" transaction), and SCB's role was at all times independent from the underlying cotton sale for the reasons expounded by the district court.

Furthermore, Thiagarajar made no showing that SCB, as a collecting bank, was aware or should have been aware that there was a significant difference between the commercial terms "raw cotton lint" as referred to in an earlier letter of credit document involving Thornton or his corporations, and raw cotton, the commodity sought by Thiagarajar. We agree that there was no legal obligation on the part of SCB to know or appreciate the difference between these two trade terms. "The bank is not expected or required to be familiar with or to consider the customs of, or the special meaning or effect given to particular terms in the trade." *Marino Indus. Corp. v. Chase Manhattan Bank N.A.*, 686 F.2d 112, 115 (2d Cir. 1985).

We also agree that there was no breach of duty on the part of SCB with respect to Thiagarajar in this transaction, and no evidence supported the allegation that SCB failed to deal in